IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEBRA McMANNES,

              Plaintiff,

   v.                                               OPINION and ORDER

WISCONSIN DEPARTMENT OF WORKFORCE         17-cv-758-jdp
DEVELOPMENT,

              Defendant.

---

Plaintiff Debra McMannes worked as an auditor for defendant Wisconsin Department of Workforce Development from 1992 until 2015, when the department terminated her. McMannes contends that the department violated the Rehabilitation Act and the Americans with Disabilities Act by failing to provide an accommodation that would allow her to continue working despite a back injury. The department has filed a motion for summary judgment, Dkt. 13, which is ready for review.

There is no dispute that McMannes could not perform her job without an accommodation at the time she was terminated. And the department attempted to accommodate McMannes for more than a year after she was injured, first by allowing her to work a reduced schedule and then by searching for a permanent part-time position for her. Under the circumstances of this case, that was all the department was required to do. Because the additional accommodations McMannes proposed were either unreasonable or ineffective as a matter of law, the department is entitled to summary judgment.

## UNDISPUTED FACTS

McMannes was an "auditor advanced trainer" for the department in the division of unemployment insurance. As part of that job, McMannes was required each year to complete between 60 and 84 field audit assignments of employers. McMannes's position, like all auditor positions within the department, was full time.

In October 2012, McMannes injured her back while traveling for work. She had to wear a full body brace for 10 months and was on medical leave until June 2013. When she returned to work, she was restricted to 12 hours a week. In August 2013, McMannes's doctor allowed her to work 18 hours a week. In October 2013, the doctor raised the restriction to 20 hours a week. In May 2014, McMannes's doctor concluded that she was subject to a permanent work restriction of no more than 18 hours a week.

In July 2014, another doctor gave McMannes an "independent medical exam" as part of her claim for workers compensation. That doctor spent 20 minutes with McMannes, "poked" her once, and had difficulty communicating with her because of a "language barrier." Dkt. 30, ¶ 32. The doctor determined that McMannes could return to work full time. (The parties do not explain the basis for the doctor's opinion.) Despite that opinion, McMannes received workers compensation for her injury.

On October 1, 2014, the department informed McMannes that it would not permit her to continue working reduced hours in her current position, but it would work with her over the next 60 days to find another part-time position for her. The department did look for a part-time position for McMannes but did not find one.

On October 30, 2014, McMannes told the department that she was considering whether to go against the wishes of her doctor and return to work full time. In response, the

department stated that it could not increase McMannes's hours because her own physician had concluded that she was not capable of working more. But the department invited McMannes to provide "any new medical restrictions" that she received from her doctor. Dkt. 16-3.

From June 2013 to February 2015, the department allowed McMannes to work part time to accommodate her work restriction. During that time, Kenneth DeLisle (McMannes's supervisor) was completing more of McMannes's audits. In 2014, McMannes completed 25 audits, down from 148 audits in 2011 and 133 audits in 2012. When the department was unable to find another part-time position for McMannes, the department terminated her in February 2015 because she was unable to work full time.

ANALYSIS

A. Overview of the claim

Both the Americans with Disabilities Act and the Rehabilitation Act prohibit discrimination by covered employers against employees with a disability. 29 U.S.C. § 794(a); *Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008). Discrimination includes the failure to provide a "reasonable accommodation." *Bellino v. Peters*, 530 F.3d 543, 548 (7th Cir. 2008). McMannes contends in this case that the department discriminated against her by terminating her because of her disability rather than giving her a reasonable accommodation.

Although the language of the statutes is not identical, courts have construed the statutes as applying the same substantive standards and have applied case law interpreting one statute to the other statute. *Brumfield v. City of Chicago*, 735 F.3d 619, 630 (7th Cir. 2013); *Hafermann v. Wisconsin Dep't of Corr.*, No. 14-cv-615-bbc, 2016 WL 206484, at *3 (W.D. Wis. Jan. 15, 2016). One potential difference between the statutes is that a state may be entitled to sovereign

immunity for claims under the ADA but not the Rehabilitation Act because sovereign immunity under the Rehabilitation Act is waived. *Amundson ex rel. Amundson v. Wisconsin Dep't of Health Servs.*, 721 F.3d 871, 872 (7th Cir. 2013). But when a plaintiff is bringing a claim under both statutes, the Court of Appeals for the Seventh Circuit has declined to consider the scope of a state agency's sovereign immunity to employment claims under the ADA. *E.g.*, *Amundson*, 721 F.3d at 873; *Jaros v. Illinois Dept. of Corr.*, 684 F.3d 667, 671–72 (7th Cir. 2012). This is because "the Rehabilitation Act by itself affords plaintiffs any relief to which they may be entitled," so "claims under the ADA become academic." *Amundson*, 721 F.3d at 873. For the same reason, it is unnecessary to consider whether the department is entitled to sovereign immunity under the ADA in this case.

The department does not deny that McMannes's back injury is a disability within the meaning of the Rehabilitation Act or that it terminated her because of that disability. Instead, the department seeks summary judgment on three closely-related grounds: (1) McMannes is not a "qualified individual" because she cannot perform all the "essential functions" of her job, 42 U.S.C. § 12111(8); (2) the accommodations McMannes requested are not reasonable; and (3) providing the requested accommodations would have imposed an "undue hardship" on the department, 42 U.S.C. § 12112(5)(A)(b). McMannes has the burden of proof on the first two issues. *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 863 (7th Cir. 2005); *Basith v. Cook Cty.*, 241 F.3d 919, 931 (7th Cir. 2001). If she meets that burden, the department must show that the accommodation would have caused an undue hardship. *Kauffman v. Petersen Health Care VII, LLC*, 769 F.3d 958, 963 (7th Cir. 2014). Because the court concludes that McMannes has failed as a matter of law to show that she is a qualified individual and was requesting reasonable accommodations, the court need not decide the issue of hardship.

**B. Ability to perform essential functions with a reasonable accommodation**

In the context of this case, the questions whether McMannes was qualified and whether her requested accommodations were reasonable collapse into essentially one inquiry. A person is "qualified" if she can perform the "essential functions" of the job at issue, with or without a "reasonable accommodation." 42 U.S.C. § 12111(8). So an accommodation is not reasonable if it would require the employer to eliminate an essential function of the job. *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 289–90 (7th Cir. 2015); *Taylor-Novotny v. Health Alliance Med. Plans, Inc.*, 772 F.3d 478, 489–90 (7th Cir. 2014); *Miller v. Illinois Dep't of Transp.* 643 F.3d 190, 198–200 (7th Cir. 2011). The primary question raised by the department's motion is whether the accommodations McMannes requested were unreasonable because they would have eliminated an essential function of her job.

It is undisputed that McMannes was unable to work full-time at the time that she was terminated and that was the reason the department terminated her. But she identifies three potential accommodations that the department could have offered to allow her to continue working: (1) allow her to continue working part-time in a full-time position (2) split her full-time position into two part-time positions so that she could fill one of those positions and someone else could fill the other position; and (3) allow her to transition back to full-time work slowly. The court will consider each proposed accommodation in turn.

**1. Allowing McMannes to continue working part time in the same position**

The first requested accommodation does not require extended discussion. The Court of Appeals for the Seventh Circuit has already held that the ability to work full time is an essential function of a full-time job, *DeVito v. Chicago Park Dist.*, 270 F.3d 532, 534 (7th Cir. 2001), so McMannes's request to work part time in her full-time job is not a reasonable accommodation.

*See also Taylor-Novotny*, 772 F.3d at 489–90 ("A plaintiff whose disability prevents her from coming to work regularly cannot perform the essential functions of her job, and thus cannot be a qualified individual for ADA purposes.").

And even if working part-time could be a reasonable accommodation for an employee who could perform the same work in a fraction of the time, that was not the situation in this case. It is undisputed that one of the essential functions of McMannes's job was to complete between 60 and 84 audits each year and that McMannes was unable to complete anywhere near that amount while she was working part time. Dkt. 30, ¶¶ 8, 46, and 49. McMannes identifies no reason that she would have been more productive in the future, which means that other employees would be required to make up the difference. The Rehabilitation Act does not require that kind of accommodation. *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 290–91 (7th Cir. 2015) ("To have another employee perform a position's essential function . . . is not a reasonable accommodation." (internal quotations and alterations omitted)). *See also Soto-Ocasio v. Fed. Exp. Corp.*, 150 F.3d 14, 20 (1st Cir. 1998) (ADA does not require employer to reallocate job duties to other employees so that disabled full-time employee can work part time).

McMannes says that the department as a whole was still able to meet all of its quotas and that individual employees' workloads did not increase year-over-year while she was working part-time. But she does not deny that her co-workers had to conduct the audits that she otherwise would have performed. The fact that the department's overall workload decreased is simply fortuitous. It does not eliminate McMannes's requirement to show that she can perform the essential functions of her job.

### 2. Creating two part-time positions

McMannes's second requested accommodation—creating two part-time positions to replace her full-time position—is also unreasonable as a matter of law. Again, the court of appeals has already resolved this issue: an employer's duty to reassign a disabled employee to a different position applies only to existing positions that are vacant at the relevant time; the employer is not required to create new positions for a disabled employee. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996) ("An employer may be obligated to reassign a disabled employee, but only to vacant positions; an employer is not required to . . . create a 'new' position for the disabled employee."); *Fedro v. Reno*, 21 F.3d 1391, 1395 (7th Cir. 1994) ("[T]he Rehabilitation Act has never been interpreted to require an employer to *create* alternative employment opportunities for a handicapped employee, or to mandate preferential treatment of an employee simply because he is handicapped."). *See also Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 856–57 (7th Cir. 2015 ("[T]he employee has to identify that a vacant position exists at the time the employee requests reassignment to that position.").

That said, the cases cited above did not involve employees who asked their employer to convert a full-time position into two part-time positions. Because a reasonable accommodation "may include . . . part-time or modified work schedules," 42 U.S.C. § 12111(9)(B), it raises the question whether employers have a duty under federal disability law to create a new part-time position if that is what is necessary to allow a disabled employee to continue working.

The Court of Appeals for the Seventh Circuit has not directly addressed this question, but courts in other circuits have. Those courts have consistently construed § 12111(9)(B) as requiring employers to consider transferring disabled employees to an existing, vacant part-time position, but not to create a new part-time job. *Green v. BakeMark USA, LLC*, 683 F. App'x

7

486, 493 (6th Cir. 2017) ("[T]he ADA did not require [the employer] to create a special, part-time position in order to accommodate [the employee with a disability]."); *Lamb v. Qualex, Inc.*, 33 F. App'x 49, 59–60 (4th Cir. 2002) ("Where . . . an employer has no part-time jobs available, a request for part-time employment is not a reasonable one."); *Terrell v. USAir*, 132 F.3d 621, 626–27 (11th Cir. 1998) ("[The employer] was not required to *create* a part-time position for Plaintiff where all part-time positions had already been eliminated from the company."). *Accord Leighton v. Three Rivers Sch. Dist.*, 693 F. App'x 662, 663 (9th Cir. 2017); *Parnahay v. United Parcel Serv., Inc.*, 20 F. App'x 53, 56 (2d Cir. 2001); *Treanor v. MCI Telecomm. Corp.*, 200 F.3d 570, 575 (8th Cir. 2000). District courts within this circuit have reached the same conclusion. *E.g., Hoffman v. Zurich Fin. Servs.*, No. 06 C 4980, 2007 WL 4219414, at *5 (N.D. Ill. Nov. 28, 2007). McMannes cites no contrary authority and the court is not aware of any.

In this case, it is undisputed that all of the department's auditor positions are full time and that the department looked for a different part-time position for McMannes but was unable to find one. McMannes does not point to any vacant part-time position that she believes the department should have offered her. Under these circumstances, federal disability law did not require the department to give McMannes a part-time position.

Even if there were some situations in which an employer could be required to create a part-time position, this would not be one of them. The department would need legislative approval to create new positions, Dkt. 31, ¶ 24 and Dkt. 30, ¶ 53, so there is no guarantee that the department could have given McMannes a part-time job, even it wanted to. Regardless, the department was reluctant to make the request because it would mean creating two positions without health insurance, making recruitment potentially more difficult over the long term.

8

Dkt. 31, ¶ 63. Because legislative approval is needed, the department could not simply convert the part-time positions back to a full-time position after McMannes retired. This is a reasonable concern. And McMannes cites no authority for the view that an employer must create two less desirable positions to accommodate a disability.[1]

   3.  **Gradual return to full-time work**

McMannes's third requested accommodation was that the department allow her to transition back to full-time work. A transition period can be a reasonable accommodation under certain circumstances, particularly when the employee is recovering from a recent injury or short-term medical condition. *E.g., Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 498 (7th Cir. 2000) ("Employees who have experienced serious medical problems often return to work part-time and increase their hours until they are working full time."). But by the time McMannes asked the department for a gradual return to full-time hours, she had already been working a reduced schedule for more than a year. And she did not propose a timeline regarding how long it would take to return to a full-time schedule.

Even assuming that a transition could be a reasonable accommodation after so much time had already passed, McMannes was required to show that her proposed accommodation would have allowed her to perform the essential functions of her job. *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 420 (7th Cir. 2016); *Basden v. Professional Transp., Inc.*, 714 F.3d 1034, 1037–38 (7th Cir. 2013). She failed to do that, either at the time she requested the accommodation or in response to the department's motion for summary judgment.

---

[1] McMannes says that she identified a former department employee who was qualified and interested in a part-time position, even without benefits. But whether one person (who was 66 years old at the time, Dkt. 31, ¶ 44) was interested in the position says little about the department's ability to attract quality applicants the next time the position became vacant.

9

McMannes's own physician concluded that she was subject to a permanent work restriction of no more than 18 hours a week. And McMannes does not allege that her symptoms were improving at the time she requested the accommodation or that she had reason to believe that her symptoms would improve soon. Even now, McMannes has not adduced evidence that would support a finding that she could have gradually returned to full-time work. An employee's hope of improvement is simply not enough. *Stern*, 788 F.3d at 289; *Basden*, 714 F.3d 1034 at 1038.

McMannes's only support for this accommodation is the opinion of the physician who examined her for the purpose of her workers compensation claim. But McMannes's reliance on that opinion is misplaced, for two reasons. First, by McMannes's own assertion, the opinion of the workers compensation doctor was not supported. She admitted in her deposition that the doctor spent only 20 minutes with her, "poked" her once, and had difficulty communicating with her because of a "language barrier." Dkt. 30, ¶ 32. She does not identify the basis of the doctor's opinion or otherwise explain why it would have been appropriate for the department to rely on it.[2] Under these circumstances, the doctor's opinion does not satisfy McMannes's burden. *See Stern*, 788 F.3d at 289 (a doctor's "speculative, untested suggestions [a]re not adequate to satisfy th[e] [employee's] burden" to show that an accommodation will be effective); *Weigel v. Target Stores*, 122 F.3d 461, 468–69 (7th Cir. 1997) (statement from doctor that "there was a good chance" that employee could return to work with treatment was too conclusory and uninformative to support a conclusion that an accommodation would have

---

[2] McMannes does not allege that the department relied on the opinion of the physician to deny or reduce her workers compensation benefits, so the court does not consider whether the department could be estopped in that situation from rejecting the opinion in the context of a request for an accommodation.

10

been successful). The department invited McMannes to provide additional medical evidence, but she failed to do so, then or now. *See Stern*, 788 F.3d at 289 ("[The employee] could have sought additional medical treatment or testing after his discharge, . . . and could have obtained non speculative, non conclusory evidence that a proposed accommodation or treatment would have allowed him to adequately perform the essential functions of his job.").

Second, the workers compensation doctor did not say that McMannes could be expected to gradually improve over time. Rather, his view was that McMannes simply did not need an accommodation and could have returned to work full-time as of July 2014, more than six months before the department terminated McMannes. So, if that doctor's opinion were controlling, it would mean that the department could have terminated McMannes in July 2014 unless she agreed to work full time then. The opinion does not support a conclusion that a gradual return to full-time hours would be a reasonable accommodation.

**C. Other arguments**

The court will briefly address other arguments that McMannes raises. First, McMannes cites Wis. Stat. § 230.37(2), which McMannes interprets as requiring the department to give her a part-time job.[3] Even if the court assumes that § 230.37(2) applied to McMannes's

---

[3] The provision states in part:

> When an employee becomes physically or mentally incapable of or unfit for the efficient and effective performance of the duties of his or her position by reason of infirmities due to age, disabilities, or otherwise, the appointing authority shall either transfer the employee to a position which requires less arduous duties, if necessary demote the employee, place the employee on a part-time service basis and at a part-time rate of pay or as a last resort, dismiss the employee from the service.

Wis. Stat. § 230.37(2).

11

situation and that the statute means what she says it does, McMannes is not bringing a claim under state law, so that statute is simply not relevant. For the same reason, McMannes's reliance on *Hutchinson Tech., Inc. v. Labor & Indus. Review Comm'n*, 2004 WI 90, ¶ 5, 273 Wis. 2d 394, 682 N.W.2d 343, a decision interpreting the Wisconsin Fair Employment Act, is also misplaced.[4]

Second, McMannes devotes a substantial portion of her brief to challenging the testimony of Thomas McHugh, the director of the bureau of tax and accounting, who said that the department would "lose" its full-time position if it allowed McMannes to continue working part time. Dkt. 10 (McHugh Dep. 22:17–25). McHugh didn't explain what he meant by that, but it doesn't matter. As explained above, federal disability law did not require the department to either continue allowing McMannes to work part time in a full-time position or to create a new part-time position for her. So even if McMannes is correct that the department could have allowed her to continue working part time without losing a full-time position, her claim still fails.

Third, McMannes cites *Sturz v. Wisconsin Dep't of Corr.*, 642 F. Supp. 2d 881 (W.D. Wis. 2009), throughout her brief and proposed findings of fact, but that case does not support her claim. In *Sturz*, the court considered the reasonableness of several accommodations proposed by an employee who suffered from a degenerative joint disease. Most of the proposed accommodations have nothing to do with this case (an electric door, working from home, better maintenance of the parking lot). The court did deny summary judgment on the question

---

[4] Regardless, the accommodation at issue in *Hutchinson* was allowing the employee to work 10, eight-hour shifts over the course of a two-week pay period rather than seven, 12-hour shifts, *Hutchinson*, 2004 WI 90, ¶ 5, so the case would not be instructive even if it were controlling precedent.

whether the employee was entitled to a reduced schedule, *id.* at 888–89, but this was only because the employer failed to raise the issue in its opening brief. The court did not hold that allowing a full-time employee to work part time indefinitely is a reasonable accommodation.

**D. Conclusion**

There is no dispute that McMannes was a good employee for the department for many years. And it is certainly unfortunate that she became disabled as a result of an injury she sustained while on the job. But the reason an employee is disabled is not relevant under the ADA or the Rehabilitation Act. The question is whether the employee can continue performing the essential functions of her job, with or without a reasonable accommodation. The department's efforts to accommodate McMannes—allowing her to work part time for more than a year and looking for another job for her—were reasonable. Because the other accommodations McMannes requested were either unreasonable or ineffective, the department is entitled to summary judgment.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendant Wisconsin Department of Workforce Development, Dkt. 13, is GRANTED. The clerk of court is directed to enter judgment in the department's favor and close this case.

Entered January 3, 2019.

                                            BY THE COURT:

                                            /s/
                                            _____
                                            JAMES D. PETERSON
                                            District Judge